1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAMERON ATHAY, JESSICA
ATHAY,

                        Plaintiff,

        v.

STATE OF WASHINGTON, et al.,

                        Defendants.

CASE NO. 3:22-CV-5422-JHC-DWC

ORDER DENYING MOTION FOR
SANCTIONS

The District Court has referred this action to United States Magistrate Judge David W.

Christel. This matter comes before the Court on Plaintiff's motion for sanctions for spoliation of

evidence. Dkts. 23, 24. Defendants have responded. Dkts. 25, 26, 27, 28, 29, 30. Plaintiff has

replied. Dkts. 31, 32. For the reasons discussed below, the Court denies Plaintiff's motion.

**I. BACKGROUND**

Plaintiff, a prisoner housed at the Monroe Correctional Complex ("MCC") who is

represented by counsel, filed this action in state court alleging Defendants violated his Eighth

Amendment rights when he collided with a locked full-length metal turnstile near Tower 9 at

MCC, breaking two teeth. Dkt. 1-2. Defendants removed the case to this Court. Dkt. 1. Plaintiff contends Defendants failed to preserve security camera footage that might have captured the incident and shown whether or not an indicator light at the turnstile showed the turnstile was locked at the time Plaintiff entered it. Dkt. 23. Plaintiff contends he is prejudiced by the unavailability of this evidence and seeks sanctions, including a default judgment on three of his four claims, exclusion of witnesses and an award of costs and attorneys' fees. *Id*. Defendants contend the electronically-stored footage (if it was captured) would have been automatically overwritten within 30 days of the incident—which was before they had notice of potential litigation. Dkt. 25.

The parties agree the underlying incident in this case occurred on May 22, 2020 as Plaintiff was returning to his cell from the gym and yard. As described by non-defendant Corrections Officer Jasper Umetsu, the procedure for movement requires the placement of two Response and Movement Officers outside of Tower 9, and a Corrections Officer in the tower who controlled the locks. Dkt. 29 at ¶¶ 4–7. The procedure calls for a radio message to be transmitted from Base to the Tower 9 officer stating movement is open, upon which the tower officer confirms the message, unlocks the turnstiles, and announces over the public address system that inmates may move through the yard. *Id*. at 7. The turnstile light will turn from red to green when the turnstile is unlocked. Dkt. 24-13 at 1 (Incident Report of Defendant Cammer).

Plaintiff contends the turnstile had a green light, showing it was unlocked, when he began to proceed through it—but it suddenly locked, causing him to collide with it and to break two of his teeth. Dkt. 17 at ¶¶ 2.4–2.5 (Amended Complaint); *see also* Dkt. 24-10 at 3 (Plaintiff's Deposition). Plaintiff contends other inmates observed the incident. Dkt. 17 at ¶ 2.6; Dkt. 26-1 at 14 (Plaintiff's grievance appeal). Plaintiff testified he went back to his unit after the incident;

1   he was seen by medical, given some medication and returned to his unit. Dkt. 24-10 at 37

2   (Plaintiff's Deposition).

3          Defendant Cammer, who was the Corrections Officer in Tower 9, asserts he had not

4   unlocked the turnstile and the light would have remained red. Dkt. 24-13 at 1 (Incident Report of

5   Defendant Cammer); Dkt. 26-1 at 35 (Cammer Deposition). Other non-defendant corrections

6   officers posted at the base of Tower 9 also report there had been no announcement the turnstile

7   was open prior to the incident, and the light was red. Dkt. 29 (Declaration of Jasper Umetsu);

8   Dkt. 26-1 at 6 (Incident Report of Joshua Whitfield). Corrections Officer Whitfield reported that

9   after Plaintiff's collision, the inmates in the area called for the turnstile to be unlocked and made

10  their way back to their unit without reporting the incident. Dkt. 26-1 at 6. He states "[Plaintiff's]

11  response and the lack of obvious signs of injury led me to conclude no injury occurred." *Id*.

12  Defendant Cammer testified he was turned away from the turnstile and was unaware of the

13  incident until he was told to file a report. Dkt. 24-11 at 3 (Cammer Deposition).

14         The parties agree a security camera was placed at Tower 9, which according to Defendant

15  Cammer's Incident Report "should show that the light was red meaning the turnstyle [sic] was

16  locked." Dkt. 24-13. Under the system in use at the time, sometimes recordings did not function

17  properly if the server was full, so not all cameras were functional. Dkt. 28 at ¶ 8; Dkt. 26-1 at 38

18  (Cammer Deposition). There was no security camera placed in Tower 9 that would have shown

19  Defendant Cammer's actions. Dkt. 24-3 at 2 (Request for Admission 2).

20         Department of Corrections ("DOC") security video is subject to a retention schedule that,

21  without intervention, results in footage being overwritten every 30 days. Dkt. 24-9 at 4 (Second

22  Interrogatories, Nos. 5, 6). Such interventions are made only in the case of a "major incident" or

23  a "significant event." *Id*.; *see also* Dkt. 24-12 at 4 (Testimony of Defendants' 30(b)(6) designee

24

1   Daniel White). Defendant's interrogatory answers state such events would include "a fight,

2   assault, [or] death." Dkt. 24-9 at 4 (Second Interrogatory 6). Defendants' 30(b)(6) designee,

3   MCC Superintendent Daniel White, testified he believed Plaintiff's incident would qualify as a

4   significant event because there was an injury. Dkt. 24-12 at 6 (White Deposition). However, it is

5   within the shift commander's discretion to determine whether an incident is deemed significant.

6   Dkt. 26-1 at 45 (White Deposition).

7          Plaintiff filed a grievance on the date of the incident, May 22, 2020. Dkt. 26-1 at 12

8   (Offender Complaint). Plaintiff reported the incident, stated medical indicated they could do

9   nothing but give Tylenol, and, for a remedy, requested "fix my teeth." *Id*. The response portion

10  of the grievance recounts the medical treatment Plaintiff received and notes the grievance was

11  "resolved informally." *Id*. On August 28, 2020, Plaintiff filed an appeal. Dkt. 26-1 at 14

12  (grievance appeal). In that document, Plaintiff disputes DOC's treatment of his original

13  grievance as "informally resolved," accuses Defendant Cammer of "assaulting" him and, in

14  addition to repeating his request for medical care, requests an investigation into Cammer's

15  conduct and monetary damages. *Id*. Plaintiff also filed a Washington State Tort Claim in July,

16  2020, which bears a received stamp of August 3, 2020 and seeks damages. Dkt. 26-1 at 8–10.

17  Plaintiff initiated this lawsuit in State court on May 5, 2022. Dkt. 1-2.

18         During the course of written discovery, Plaintiff sought the production of any

19  surveillance video, and Defendants disclosed video footage of the incident (to the extent it had

20  been captured) would no longer exist, as it would have been overwritten after 30 days. Dkt. 24-9

21  at 4 (Interrogatory 5). After further written discovery to obtain applicable policies, Plaintiff

22  brought this motion, contending Defendants have spoliated the video and seeking sanctions. Dkt.

23  23.

24

1

**II. DISCUSSION**

2   **A.  Legal Standard**

3        The spoliation of electronic discovery is governed by Fed. R. Civ. P. 37(e), "which

4   essentially functions as a decision tree." *Oracle America, Inc. v. Hewlett Packard Enter. Co.,*

5   328 F.R.D. 543, 549 (N.D. Cal. 2018).[1] As amended December 1, 2015 to clarify when United

6   States District Courts should use certain measures to respond to allegations of spoliation of

7   electronically stored information ("ESI"), Fed. R. Civ. P. 37(e) provides:

8         If electronically stored information that should have been preserved in the
        anticipation or conduct of litigation is lost because a party failed to take

9         reasonable steps to preserve it, and it cannot be restored or replaced through
        additional discovery, the court:

10           (1) upon finding prejudice to another party from loss of the information,
              may order measures no greater than necessary to cure the prejudice; or

11

12           (2) only upon finding that the party acted with the intent to deprive
              another party of the information's use in the litigation may:
              (A) presume that the lost information was unfavorable to the party;

13               (B) instruct the jury that it may or must presume the information was
                    unfavorable to the party; or

14               (C) dismiss the action or enter a default judgment.

15        The threshold inquiry is whether ESI has been "lost," which requires the consideration of

16   three questions:  (a) did the discoverable ESI exist at the time a duty to preserve arose, (b) did the

17   party fail to take reasonable steps to preserve the ESI, and (c) is the evidence irreplaceably lost?

18   *Oracle America*, 328 F.R.D. at 549; *see also Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL

19   2289067, at *6 (N.D. Cal. Mar. 28, 2022) (courts should consider three threshold criteria,

20   whether: "(1) the ESI 'should have been preserved in the anticipation or conduct of litigation';

21

22

23       [1] Sanctions arising out of alleged spoliation of electronically stored information are governed by Rule
  37(e), rather than the Court's inherent authority. Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015
  Amendment; *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018).

24

(2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or replaced through additional discovery.'"). If the answer to any of these questions (a)–(c) is "no," then a motion for spoliation sanctions must be denied. If all the questions are answered "yes," then the Court proceeds to determine whether the moving party has been prejudiced and whether the party subject to potential sanctions had an intent to deprive.

Courts in this circuit have indicated the moving party must establish spoliation by a preponderance of the evidence. *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951 at *10 (S.D. Cal. Dec. 4, 2019) ((following Ninth Circuit precedent permitting proof of intent under Rule 37(e)(2) by preponderance of the evidence, not clear and convincing evidence).

**B.  Duty to Preserve**

The initial threshold inquiry is when Defendants' duty to preserve data in this litigation was triggered. Here, that inquiry is dispositive of Plaintiff's motion.

Plaintiff contends his grievances, Defendants' internal policy of retaining video for "significant events" and the fact of his injury provided sufficient notice to Defendants that they should have anticipated litigation and preserved any existing video. Dkt. 23 at 7–8.

Defendants contend they did not reasonably anticipate litigation arising out of the incident within the thirty-day window for retrieval of video footage. Dkt. 25 at 6–9. Defendants note this litigation was not filed until approximately two years after the incident, and contend the earliest point at which they could reasonably anticipate litigation was Plaintiff's submission of his state tort claim in August, 2020—which was past the 30-day period during which video of the incident could be retrieved. Dkt. 25 at 4.

A party's obligation to preserve evidence for use in litigation arises when litigation is pending or becomes "reasonably foreseeable." *See Hynix Semiconductor Inc. v. Rambus Inc*., 645 F.3d 1336, 1345-46 (Fed. Cir. 2011) (applying Ninth Circuit law); *Apple, Inc. v. Samsung*

*Electronics Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *see also Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018). This is "a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Micron Tech.*, 645 F.3d at 1320. The mere existence of a potential claim or the distant possibility of litigation are insufficient. *Hynix*, 645 F.3d at 1346. However, litigation need not be "imminent" for it to be reasonably foreseeable. *Id.*

Here, Plaintiff did not initiate this matter until May 5, 2022, nearly two years after the incident occurred and well after the 30-day retention period. Accordingly, Plaintiff must establish by a preponderance of the evidence that Defendants should reasonably have anticipated this lawsuit two years earlier.

1. Plaintiff's Grievances

Although Plaintiff ultimately filed both a tort claim and a grievance appeal asserting he had been "assaulted" by Defendant Cammer and seeking compensation, these documents were filed in August 2020, after the 30-day retention window for camera footage. *See* Dkt. 26-1 at 8–10 (tort claim, filed August 8, 2020); Dkt. 26-1 at 14 (grievance appeal, filed August 28, 2020). The only grievance Plaintiff filed before the video would have been overwritten was his initial grievance, filed May 22, 2020 (the "Initial Grievance"). Dkt. 26-1 at 12 (Offender Complaint).

The Initial Grievance does not provide notice of anticipated litigation sufficient to trigger a duty to preserve the Tower 9 video. Although the grievance discusses the incident, its focus is upon the medical care Plaintiff received, and the relief requested is to "fix my teeth." *Id*. As the

1  grievance addressed Plaintiff's medical care, it was provided to medical staff for a response,

2  which recounts the medical care Plaintiff had received, as well as anticipate follow-up. The

3  response also notes the complaint was "resolved informally." *Id*. To the extent the Initial

4  Grievance suggested any potential future litigation, it would only have implicated his medical

5  care—and triggered a duty to retain medical records. Nothing in the Initial Grievance would

6  have notified Defendants they should preserve the Tower 9 camera footage of the underlying

7  incident.

8          Where a prisoner's previous complaint or grievance provides sufficient notice of

9  anticipated litigation, courts have found it could trigger a preservation obligation. *See*, *e.g.*,

10 *Sanders v. Los Angeles Cnty.*, No. CV 15-00907-AG (RAO), 2019 WL 12831725, at *3–5 (C.D.

11 Cal. Aug. 1, 2019) (collecting cases). However, where a grievance addresses a different topic, is

12 not received by relevant staff, or does not contain sufficient detail, courts have declined to find it

13 supports a preservation duty. *See*, *e.g. Gronquist v. Nicholas*, No. C10-5374 RBL/KLS, 2011

14 WL 4001103, at *8–9 (W.D. Wash. Aug. 12, 2011), *report and recommendation adopted,* No.

15 C10-5374 RBL/KLS, 2011 WL 4007327 (W.D. Wash. Sept. 8, 2011) (public records request for

16 prison video and policies was insufficient to show defendants had notice of potential litigation

17 sufficient to trigger preservation  duty); *Voskanyan v. Unknown*, No. 2:15-CV-06259-MWF-

18 KES, 2018 WL 6164257, at *1 (C.D. Cal. Mar. 21, 2018) (prison complaints filed during the

19 retention period complaining of assault by other inmates and certain injuries did not create a

20 preservation duty absent evidence of who received them at the time); *Cretacci v. Hare*, No. 4:19-

21 CV-55-SKL, 2021 WL 201778, at *2 (E.D. Tenn. Jan. 20, 2021) (initial grievance did not trigger

22 duty to preserve video because it did not mention the possibility of litigation or notify staff with

23 appropriate authority; instead, duty arose after officials received letter from counsel stating he

24

1    was investigating potential causes of action.); *Briggs v. Plichta*, No. 1:13-CV-1280, 2017 WL
2    4051694, at *3 (W.D. Mich. Aug. 11, 2017), *report and recommendation adopted,* No. 1:13-CV-
3    1280, 2017 WL 3981096 (W.D. Mich. Sept. 11, 2017) (grievance requesting copy of a single
4    video was insufficient to create a duty to preserve all videos from different locations).

5            Plaintiff's Initial Grievance addresses his medical care, was answered by medical staff,
6    and did not place any Defendant on notice of anticipated litigation sufficient to trigger an
7    obligation to preserve the Tower 9 video. Instead, the Court finds the obligation to preserve
8    evidence relating to Plaintiff's claims in this action arose, at the earliest, when Plaintiff filed his
9    tort claim on August 2, 2020; by this time, the retention period for the Tower 9 camera had
10   expired.

11       2.   Retention Policies

12           Plaintiff also contends DOC's retention policies impose a Rule 37(e) duty to preserve.
13   Dkt. 25 at 8.

14           Neither party has submitted copies of the relevant policies. Instead, both parties rely upon
15   the testimony of Superintendent Daniel White, who was a witness designated by Defendants
16   pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiff emphasizes Superintendent White's testimony that
17   he believes the incident at issue here qualifies as a "significant event" for which camera footage
18   should be preserved, because it involved an injury. *See* Dkt. 24-12 at 6. Defendants emphasize
19   Superintendent White's testimony that whether an incident qualifies as a "significant event" is a
20   matter within the discretion of the shift commander. *See* Dkt. 26-1 at 45.

21           The Advisory Committee Notes to Rule 37(e) caution against reliance upon independent
22   preservation obligations—such as document retention policies—in the spoliation context:

23           The court should be sensitive, however, to the fact that such independent
             preservation requirements may be addressed to a wide variety of concerns unrelated
24           to the current litigation. The fact that a party had an independent obligation to

preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.

Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment.

Plaintiff cites two cases, *Musse v. King Cnty.*, No. C18-1736-JCC, 2021 WL 4709875, at *1 (W.D. Wash. Oct. 8, 2021) and *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 1464830, at *1 (E.D. Wash. May 9, 2022), for the proposition that a duty to preserve can be derived from a party's document retention policies. Dkt. 31 at 3.

Notably, neither *Musse* nor *Hill* invokes the spoliating party's document retention policies as a ground for finding a duty to preserve information. Instead, both cases—having already found such a duty—discuss the violation of internal preservation policies as evidence of the wholly separate element of "intent to deprive" found in Rule 37(e)(2). *See Musse*, 2021 WL 4709875 at *4; *Hill*, 2022 WL 1464830 at *12.

Moreover, both courts' determinations of the duty to preserve were based upon factual settings distinct from the facts of this case, which demonstrated the reasonable foreseeability of litigation. In *Hill*, the spoliating party conceded it reasonably anticipated civil litigation as the result of plaintiff's death. *Hill*, 2022 WL 1464830 at *10.

In *Musse*, the court emphasized multiple factors from which the spoliating party should have anticipated litigation: (1) "significant injuries" including a broken eye socket, dental injuries and traumatic brain injury requiring hospitalization; (2) the existence of other lawsuits arising from the same context of inmate-on-inmate violence; and (3) the actual pendency of a criminal action against the plaintiff's assailant. *Musse*, 2021 WL 4709875 at *3. None of these factors are present in this case.

Defendants' document retention policies do not show that they should reasonably have anticipated litigation and thus had a duty to preserve camera footage. Instead, any violation of those policies would become relevant later in the spoliation analysis to determine the existence of a culpable state of mind—*if* the threshold issues were established.

3. Injury

Plaintiff also argues that the fact of his injury provides notice of potential litigation sufficient to create a preservation duty. Dkt. 23 at 8, citing *Bistrian v. Levi*, 448 F.Supp. 3d 454, 470 (E.D. Pa. 2020).

The court in *Bistrian* concluded defendant should have reasonably anticipated litigation—but it relied on more than the fact of plaintiff's injury alone. Indeed, the court emphasized that courts consider a "variety of factors," of which the type and seriousness of the injury is only one. 448 F.Supp. at 468. The court concluded defendant should have anticipated litigation soon after plaintiff's violent attack by a fellow prisoner because, in addition to plaintiff's serious injuries, the nature of such an attack frequently leads to litigation, plaintiff had repeatedly threatened litigation, and defendants also commenced a criminal prosecution, disciplinary proceedings and a staff compliance investigation arising out of the same incident. 448 F.Supp. at 472. This case presents none of these additional factors.

Here, Defendants had little reason to expect litigation. In the immediate aftermath of the incident, Plaintiff and his fellow inmates "made their way to their unit without reporting the incident." Dkt. 25-1 at 6. Indeed, Corrections Officer Whitfield reported Plaintiff's response and "lack of obvious signs of injury" led him to conclude initially that no injury had occurred. *Id*. When Plaintiff did bring a grievance, his initial focus was on his medical care, not on any allegations of wrongdoing that would implicate the Tower 9 camera footage. As the Sixth Circuit stated in *Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012) "[t]o impose a rule to cover every

1  such situation would unnecessarily interrupt a prison administrators' judgment as to how to

2  operate their prisons and force prison employees to constantly second-guess their employer's

3  ability to maintain potential evidence for possible litigation."

4       The Court finds Plaintiff has not established by a preponderance of the evidence that

5  Defendants should reasonably have anticipated litigation within the 30-day retention period for

6  camera footage. Accordingly, Plaintiff cannot establish spoliation and is not entitled to sanctions.

7  **C.  Plaintiff's Alternative Motion for Attorneys' Fees**

8       Plaintiff moves, in the alternative, for attorneys' fees and costs he incurred to disprove

9  Defendants' denial of Request for Admission ("RFA") No. 3.

10      Fed. R. Civ. P. 37(c)(2) provides:

11      If a party fails to admit what is requested under Rule 36 and if the requesting
        party later proves a document to be genuine or the matter true, the requesting
12      party may move that the party who failed to admit pay the reasonable expenses,
        including attorney's fees, incurred in making that proof. The court must so order
13      unless:

14           (A) the request was held objectionable under Rule 36(a);
             (B) the admission sought was of no substantial importance;
15           (C) the party failing to admit had a reasonable ground to believe that it
                   might prevail on the matter; or
16           (D) there was other good reason for the failure to admit.

17      RFA No. 3 asks Defendants to "admit that DOC violated its policies when it did not

18  retain videos of the incident described in Plaintiffs' Complaint." Dkt. 24-3 at 2. Defendants

19  responded: "Deny. DOC did not violate policy by not retaining the video. It is the normal

20  practice to retain video for major events, this was not considered a major event."

21      Plaintiffs contend this answer was false, because Defendants' 30(b)(6) witness,

22  Superintendent White, testified: "In my review of the DOC policy, I believe that it qualifies as a

23  significant event under Category 1." Dkt. 24-12 at 6.  Superintendent White affirmed that this

24  was because "there was an injury." *Id*.

Defendants contend their RFA response was not false. They note Superintendent White also acknowledged that "under DOC policy there is some discretion in what an officer would decide is an incident." Dkt. 26-1 at 45.

The Court cannot conclude, based upon the testimony provided, that Defendants' response to RFA No. 3 was false. While Superintendent White "believe[d]" the incident qualified as a significant event, he also testified this determination is subject to the discretion of the shift commander. Thus, it does not appear there is a single, unequivocal answer to the question whether the incident qualified as a significant event; instead, the shift commander has discretion to make that determination. Accordingly, if the shift commander did not consider the incident at issue here to be significant, the response to the RFA was accurate.

Plaintiff's alternative request for attorneys' fees and costs related to RFA No. 3 is therefore denied.

## III. CONCLUSION

The Court therefore ORDERS as follows:

1. Plaintiff's motion for sanctions for spoliation of evidence pursuant to Fed. R. Civ. P. 37(e) is DENIED;

2. Plaintiff's alternative motion for an award of costs and fees to disprove Defendants' denial of Request for Admission 3 is DENIED.

Dated this 8th day of June, 2023.

David W. Christel
Chief United States Magistrate Judge